```
                    UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
                          Newport News Division
```

**JOSEPH MCKINLEY THOMAS,**

       **Plaintiff,**

**v.**                                                            **4:03CR112**
                                                               **4:04CV114**

**UNITED STATES OF AMERICA,**

       **Defendant.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by plaintiff's motion to vacate, set aside, or correct a sentence previously imposed, pursuant to 28 U.S.C. § 2255. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 28 of the Rules of the United States District Court for the Eastern District of Virginia.

### I.   STATEMENT OF THE CASE

### A.   Background

On December 2, 2003, plaintiff entered a guilty plea to an indictment charging him with one count of possession with intent to distribute cocaine base. On March 1, 2004, the matter came on for sentencing. A pretrial report was prepared, and a determination was made that plaintiff's sentencing guideline range was 188 to 235 months for an offense which carried a five year minimum and a forty year maximum sentence. Following argument, the District Court sentenced plaintiff to 200 months confinement, the lower end of the guideline range.

Plaintiff's guilty plea was entered pursuant to a plea agreement, which contains the following language:

> The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

(United States' Response and Mot. to Dismiss, etc., Ex. A at 2.)

Throughout the course of the criminal case, plaintiff was represented by Water B. Dalton, Esquire, a federal public defender. No appeal was taken. Instead, on September 15, 2004, plaintiff filed the motion to vacate, set aside, or correct sentence, which is now before the Court. Plaintiff asserted that he had been abandoned by Dalton and claimed ineffective assistance of counsel for Dalton's failure to file a notice of appeal, when requested to do so after sentencing. The United States filed a response to the petition, a motion to dismiss, and an affidavit of Walter B. Dalton in support thereof, which states, in part, "[t]he defendant never requested that I appeal his case." (Mot. to Dismiss, Ex. B, ¶ 6.)

### B. Issue

It appears that only a single issue has been presented in this matter: Whether plaintiff requested Dalton to file an appeal. However, in the broader context, the real issue is whether plaintiff received effective assistance of counsel.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993). The courts must construe the complaint liberally in favor of the plaintiffs, even if recovery appears remote and unlikely. In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference. See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### B. Ineffective Assistance of Counsel Standard

The standards upon which claims of ineffective assistance of counsel are to be judged are relatively clear. They were established in Strickland v. Washington, 466 U.S. 668 (1984), and have been applied on numerous occasions by this Court. In Strickland, the Supreme Court approved as the proper standard for attorney performance that of "reasonably effective assistance." Id. at 687. The Court stated:

3

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 686-87.

There are, therefore, two elements of the Strickland test, each of which must be met before the conduct of counsel can be found constitutionally defective. First, plaintiff must show that he received deficient legal representation, measuring the competency of his counsel against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Plaintiff must also show actual prejudice; that is, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494 (1986); Poyner v. Murray, 964 F.2d 1404, 1425 (4th Cir. 1992)).

The burden on plaintiff is to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. That translates into a reasonable probability that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In analyzing trial counsel's performance under the "deficiency" prong of Strickland, a reviewing court is required to be highly deferential in scrutinizing counsel's tactics. See Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996). Further, reviewing courts are admonished to "not permit the benefit of hindsight to impact . . . review." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995)(citing Strickland, 466 U.S. at 689).

While it is clear that a single issue, whether plaintiff specifically requested that an appeal be filed, must be resolved, the question arises out of a broader context, namely, the effectiveness of representation by appointed counsel.  At the outset, it is important to state that this is a case that must be decided upon the facts, therefore, the credibility of the witnesses is extremely important.

    1.  <u>Plaintiff did not request that an appeal be taken</u>.

At the beginning of the evidentiary hearing, plaintiff testified that it was his intention not to give up his right to appeal and asserted that he told Dalton he wished to file an appeal, which was not done. (Tr. at 4, 5, 7.)  The record continues:

> Q.   Did you direct your counsel to file an appeal?

> A.   Yes.  I asked him to come see me.  I asked him to come see me, and I told him I had some issues that I wanted to appeal.
>
> Q.   Okay.
>
> A.   And he explained to me there wasn't any issues that he could appeal, because it could enhance my guidelines and I could be brought further sentence to my sentence.

(Tr. at 7-8.)  Later, when the Court was inquiring whether Dalton saw plaintiff after his sentencing, plaintiff said:

> THE DEFENDANT:  He came to see me down here.
>
> THE COURT:  He came to see you after you were sentenced?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  All right.  And you said to him what?
>
> THE DEFENDANT:  I asked him -- he asked me would I want my appeal rights back?  I said, Yes, I would like to appeal.  But he said, You know at this prior time if you seek any type of appeal, the government can seek an enhancement to your sentence because you waived your right to appeal.  I told him I never wanted to waive my right to appeal, and I asked him could he come to see me at Portsmouth City Jail prior to my ten day's notice before my appeal would be sentenced, and I never heard from him again.

(Tr. at 9.)

Plaintiff acknowledged that he was told by Dalton "a thousand times" that he had waived his right to appeal and he further acknowledged that he was informed by the trial court that he was waiving his right to appeal.  Further, in the course of discussing the waiver, the trial court informed plaintiff that he had ten days to note an appeal, stating:

> One other matter, Mr. Thomas.  As part of your plea agreement you waived your right to appeal.  Generally, waivers of appeal are enforceable.  However, if for some reason you should believe that your waiver of appeal is unenforceable, then you may present that issue to the Court of Appeals.  To

>       do that, you must file a notice of appeal within
>       ten days from today.  If you do not file a notice
>       of appeal on time, you may lose your right of
>       appeal.

(3/1/04 Tr. at 23-24.)

On cross-examination, plaintiff acknowledged that he understood the government had withdrawn its effort to enhance his punishment because of prior drug convictions, a result of negotiations by Dalton, and further admitted that his plea agreement specifically included a waiver of the right to appeal. Plaintiff further admitted that he took no steps to stop the case from going forward because he wished to pursue an appeal. It is clear from the sentencing record and his testimony herein that plaintiff wanted the benefit of the deal Dalton negotiated.

During the evidentiary hearing, plaintiff asserted that he told Dalton before and after sentencing that he did not want to give up his right to appeal but admitted that he "never told the court that." (Tr. at 25.) The Court informed plaintiff that he was told at the time of trial that if he took the deal, he waived his right to appeal; that he signed a document waiving his right to appeal; and that his attorney told him that he was waiving his right to appeal. However, plaintiff accepted the plea agreement "because during that time Mr. Dalton made me believe that this was the right way I was going." (Tr. at 25.) Immediately thereafter, plaintiff stated that his "basic argument" was the "three-point enhancement motion," which was erroneously filed by the government and would have added three points to plaintiff's criminal history. Plaintiff asserted that no answer was ever filed in response to the three-point enhancement motion, but a response was unnecessary

7

because the United States never pursued the "three-point enhancement" issue. The motion was filed in error. Plaintiff stated that his prior convictions were reflected in a docket sheet, which he obtained from the Fourth Circuit Court of Appeals in July, 2004, more than four months afer he had been sentenced. The matters about which he was concerned played no part in his sentencing.

The testimony during the hearing further revealed that while the "three-point enhancement" was not sought, plaintiff shifted gears, acknowledging that he is a career criminal but asserting that he "didn't think they would use them [prior convictions] under the 4B1 [career criminal category]." (Tr. at 28.) Plaintiff was not asked to explain how he arrived at that decision. What was apparent to the Court was that plaintiff was trying to make a silk purse out of a sow's ear. Unfortunately, he had no fabric.

Prior to the evidentiary hearing, plaintiff notified the Court that Jessica Correll, a friend, and Gloria Palmer, his mother, would be called as witnesses during the hearing. (Pl.'s Pretrial Issue, Ex. and Witness List at 1.) Correll was expected to testify that she called Dalton several times, at plaintiff's direction, and that she left messages for Dalton to file an appeal on plaintiff's behalf. Correll was further expected to testify that she began leaving the messages two days after the sentencing hearing. Plaintiff stated that Palmer was expected to testify that she asked Dalton "about filing an appeal" on plaintiff's behalf, and Dalton indicated to her that plaintiff did not have a right to appeal. (Pl.'s Pretrial Issue, Ex. and Witness List at 2.) Each of the witnesses was called on plaintiff's behalf to testify during the hearing.

In response to the question of whether she had attempted to do anything on plaintiff's behalf, Correll stated, "I know I called once about the court papers or the transcripts, and I asked about an appeal . . ." (Tr. at 36.) Correll admitted speaking with Dalton only once, not several times as suggested, and could not say whether the conversation took place before or after the sentencing hearing. In the Court's opinion, Correll was an honest witness, who did not attempt to enhance her testimony in any way. She was factual, direct, and simply did not know when she had made the call on plaintiff's behalf. As will be shown later, Dalton knew when the call was made.

Palmer had attended court during plaintiff's trial, knew Dalton, and had several conversations with him, including talking to him about an appeal. According to Palmer, she talked to Dalton after the trial and then after sentencing. She was informed by Dalton that plaintiff had waived his right to appeal in the plea agreement, and she learned more of what the plea agreement contained. Palmer stated that she had called Dalton on several occasions, but like Correll, she had absolutely no idea of when the calls had taken place. Following Palmer's testimony, plaintiff rested.

Dalton was called and testified regarding his representation of plaintiff. He stated unequivocally that the plea agreement contained a waiver of right to appeal and that plaintiff was reluctant, expressing concern about the time he would receive. Nevertheless, on December 1, 2003, plaintiff decided to plead guilty. On December 2, 2003, Dalton made a motion for substitution of counsel, explaining plaintiff's concern, but the motion was denied. At that point, plaintiff elected to go forward with the guilty plea, in spite of the fact that the plea

9

agreement contained an absolute waiver of his right to file an appeal.

Dalton shared the fact that plaintiff had some concerns about matters in his record that were raised with the probation officer. The concerns arose out of findings by the probation officer that plaintiff had traffic convictions that were severe enough to create an enhancement of his offense level. However, this was not done because plaintiff, who is viewed as a career criminal by virtue of two prior criminal convictions for the distribution of drugs, already faced serious time, and the traffic offenses were irrelevant in terms of the ultimate sentence.

Dalton testified that he met with plaintiff after sentencing and that he spoke with Palmer. In the course of the testimony, Dalton was absolutely clear:

> Q. Now, after [plaintiff] was sentenced to 200 months and a term of supervised release, did you have a chance to see him following the sentencing hearing?
>
> A. I did. I have a note in my file -- you know, again, it's my routine practice, I met with [plaintiff] after he was sentenced, and I also spoke with his mother briefly. I don't really have any notes about what we discussed, but I do have a note in my file that after court I spoke with [plaintiff] and also spoke with his mother.
>
> Q. And based on your recollection of that conversation, did [plaintiff] ever tell you to file an appeal in this case?
>
> A. No, he did not.

(Tr. at 47-48.)

Thereafter, Dalton was asked about conversations he may have had with Palmer or Correll. Dalton was able to bring specific details to the testimony of each of the witnesses. Regarding Correll, Dalton had

10

a note of a phone call received by his office on July 21, 2004. The sentencing occurred on March 1, 2004, more than four months before the phone call. Correll called him regarding transcripts in the case, and he returned the call and told Correll he did not have the transcripts. Dalton gave Correll the number of the court reporter, but there were no other calls from Correll.

Regarding post-sentencing conversations with Palmer, Dalton indicated that he received a phone call from Palmer on February 4, 2004. During the conversation, Palmer informed Dalton that plaintiff needed to see him, a need which was fulfilled by Dalton who discussed the sentencing guidelines with plaintiff. According to Dalton, his file revealed no further calls from Palmer after the call on February 4, 2004.

As Dalton testified, plaintiff did not formerly request that an appeal be filed, Palmer did not request on behalf of plaintiff that an appeal be filed, and Correll did not suggest that an appeal be filed. Dalton stated:

> the only time I can recall [plaintiff] discussing with me the possibility of his appealing is the day I reviewed his presentence report with him which was February 3rd at the jail. He brought it up at that time, the possibility of pursuing an appeal. And at that time, as I recall, I reminded him again that there was this waiver of appeal provision in the plea agreement, and it seemed to me at that time that he understood that that would mean that he would not be able to appeal his case.

(Tr. at 52.) As explained by Dalton, plaintiff had two choices: to plead guilty and receive the benefit of not being enhanced as a career defender for sentencing purposes, or let his case be tried and face the possibility of enhancement as a career offender. The difference in penalty would have gone from a minimum of five years and a maximum of

11

forty years to a minimum of ten years and a maximum of life imprisonment. There was a real benefit obtained in the course of entering the guilty plea.

Plaintiff graduated from highschool in 1984, and attended one year of college. His presentence report revealed that he was convicted of two counts of distribution of cocaine in York County, Virginia, on September 25, 1990. He received ten years in the penitentiary on each offense, with nine years suspended on one offense for a period of ten years, and the entire sentence for the other offense suspended for ten years. However, plaintiff violated the terms and conditions of probation. On May 22, 1992, plaintiff was sentenced to jail on a new count of distribution of cocaine, second or subsequent offense, receiving fifteen years in the penitentiary. Plaintiff was released from incarceration on January 26, 1999, and entered parole supervision on April 23, 1999. Based on the charges in this Court, the Virginia Parole Board issued a warrant on November 10, 2003, which was on file at the time of his sentencing hearing on the federal charges.

The sentence plaintiff received for his third drug conviction, 200 months (16 years, 8 months), was only 20 months longer than his second state conviction, and he faced a relatively short minimum time, five years, to be served. Plaintiff knew his offense, if enhanced, would carry far more harsh consequences. His decision to plead guilty was his alone but when made, carried the burden of a forfeited right to appeal. Plaintiff understood that fact, and he did not direct Dalton to file an appeal.

2. <u>Plaintiff received effective assistance of counsel</u>.

Dalton was called upon to represent a defendant with the following criminal record: (1) two separate felony convictions for distribution of cocaine, (2) three driving under the influence convictions, (3) and one charge of driving, after having been declared an habitual offender. Plaintiff faced a maximum of forty years in the penitentiary and a minimum of five. Had a career offender enhancement been added, he would have faced a minimum of ten years and a maximum of life imprisonment. Instead, Dalton, in a case in which he had no opportunity of prevailing on the merits, persuaded the government not to add a career offender enhancement, and persuaded plaintiff to enter a guilty plea.

In <u>Frazier v. South Carolina</u>, No. 04-650 (decided December 8, 2005), the Fourth Circuit affirmed the judgment of the district court granting relief to the petitioner on his claim that his attorney failed to consult with him regarding direct appeal following his sentencing on state drug trafficking charges in 1994, causing him to lose his right to appeal. Judge Duncan stated, "it is undisputed that Frazier and the state assumed that the trial judge would apply concurrent five year sentences. However, the court imposed consecutive five year sentences and a fine of $100,000.00, despite the fact the maximum fine for Frazier's conviction was $25,000.00." <u>Frazier</u> at 2. On review of the facts of the case, there is no question that Frazier was surprised and shocked by the sentence, as was his counsel, who gave his client assurances that he would file the necessary paperwork. The only thing that defense counsel did, following the sentencing, was to make an informal oral motion for reconsideration of the sentence, which the trial

13

court denied without order or other elaboration.  Following denial of the motion, counsel never again spoke with Frazier, failed to file an appeal, and failed to do anything to resolve Frazier's circumstance, even in the face of the fact that the maximum fine that could be imposed was only $25,000.00. Thereafter, a post-conviction hearing resulted in reduction of the fine from $100,000.00 to $25,000.00, but no further action was taken with regard to the sentence, nor was the issue of Frazier's appeal addressed.

The Fourth Circuit, in the face of a strong and lengthy dissent by Judge Luttig, determined that in failing to consult with his client, counsel had not effectively represented Frazier and affirmed the finding of the district court that counsel had an obligation under Strickland to consult with Frazier regarding an appeal.  As the court noted:

> A defendant has a right to pursue a direct appeal, even if frivolous, which counsel must assist as "an active advocate in behalf of his client." Anders v. California, 386 U.S. 738, 744 (1967).  Although counsel need not press particular issues of the defendant's choosing, by implication counsel must consult with the defendant to identify whether there are any meritorious issues to appeal.

Frazier, at 7.  This Court agrees with the Frazier decision, but the facts of plaintiff's case are distinguishable.

There is no question that Dalton consulted with plaintiff before the arraignment, after the arraignment, and before and after sentencing; that he informed plaintiff in no uncertain terms, and plaintiff understood, that the plea agreement which had been negotiated stripped plaintiff of his right to note an appeal, save and except in a most extraordinary circumstance, such as an illegal sentence; and that

plaintiff was aware of the result of entering a guilty plea at the time the plea was entered. Dalton saw plaintiff immediately after sentencing and, thereafter, took no further action because, as he noted, he received no written or oral communication from plaintiff, plaintiff's family, or any of plaintiff's friends indicating clearly and unequivocally plaintiff's desire to note an appeal. The request for the transcript came four months after sentencing, and Palmer's inquiry took place before sentencing.

It is the Court's judgment that rather than ineffective counsel, this case involves a plaintiff fabricating a set of facts in the hope of obtaining a reversal of his conviction and some other resolution of his case. Plaintiff has not presented a credible case upon which to receive the relief he seeks.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's motion to vacate, set aside, or correct sentence be DENIED and defendant's motion to dismiss be GRANTED.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules. See 28 U.S.C. § 636(b)(1)(C)(2000); Fed.R.Civ.P. 72(b). A party may respond to

another party's objections within ten days after being served with a copy thereof.

      2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

      The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

                                                                  **/s/**
                                          **James E. Bradberry**
                                          **United States Magistrate Judge**

**Norfolk, Virginia**

    **January 6**    , **2005**

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

David M. Good, Esq.
Lynnhaven Building
2396 Court Plaza Dr.
Virginia Beach, VA  23456


Eric M. Hurt, Esq.
Assistant U.S. Attorney
Fountain Plaza Three, Ste. 300
721 Lakefront Commons
Newport News, VA  23606

                                      Elizabeth H. Paret, Clerk


                                      By _____
                                                      Deputy Clerk

                                      _____, 2006